347 A.2d 41.

STATE *vs.* STEPHEN M. McDONOUGH.

NOVEMBER 6, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. The only issue before us on this appeal is whether the trial justice erred in denying the defendant's motion to dismiss the indictment against him because of the alleged failure of the state to grant the defendant a speedy trial in violation of his rights under the sixth amendment to the Constitution of the United States which provides that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial * * *."

The defendant was indicted on charges arising out of an armed robbery at the Valle's Steak House in the city of Warwick on August 4, 1971. The defendant was first charged by the Warwick Police Department on September 4, 1971. A second charge was brought against him by the Warwick police on September 12, 1971. The defendant was never arraigned on the District Court complaints and warrants.

On September 4, 1973, the Warwick police lodged a detainer against defendant with the United States Penitentiary at Lewisburg, Pennsylvania where defendant had been in federal custody since September 23, 1971. In November 1973, defendant wrote two letters to a justice of the Superior Court requesting that the detainer which had been lodged against him be dismissed.

One of the letters was read into the record in the Superior Court; it stated that the Warwick police officer who lodged the detainer knew of defendant's whereabouts; that defendant was then serving a 23-year sentence at the federal penitentiary; that there were seven detainers lodged against him; and that they were a hardship to his

rehabilitation process, since it was difficult to get into school and job training programs because of the detainers.

As a result of defendant's letter, the Attorney General's Department took measures to bring the matter before the Grand Jury. The case was brought before the March 1974 Grand Jury in Kent County and on May 3, 1974, defendant was indicted in three counts, namely, Count I. Robbery; Count II. Assault with a dangerous weapon; and Count III. Possession of a firearm while committing a crime of violence.

The defendant was arraigned on May 24, 1974, and on July 15, 1974, he filed a motion to dismiss for lack of a speedy trial. This motion was heard before a justice of the Superior Court.[1] After hearing argument of counsel the trial justice denied the motion and, on July 19, 1974, defendant was brought to trial before the same judge and a jury.

The case against defendant consisted entirely of eye-witness identification. A cashier, a waitress, and a restaurant manager each, in turn, identified defendant as the man they saw on August 4, 1971, at the time of the incident involved in this case. Before the case went to the jury, a motion for judgment of acquittal was granted as to count II of the indictment and the case went to the jury on counts I and III. The jury returned verdicts of guilty on both counts.

On October 16, 1974, the trial justice granted defendant's motion to dismiss with respect to count III on the basis of our ruling in State v. Boudreau, 113 R. I. 497, 322 A.2d 626 (1974).[2] On the same day he sentenced

---

[1] This hearing consisted merely of oral argument by the prosecuting attorney and defendant's counsel. It was not an evidentiary hearing.

[2] State v. Boudreau, 113 R. I. 497, 322 A.2d 626 (1974), held that where two charges, to wit, assault with a dangerous weapon and possession of a firearm while in the commission of a crime of violence, require the same

defendant to the Adult Correctional Institutions for a term of 24 years to run concurrently with the sentence he was then serving under the federal convictions. The case is before this court on defendant's appeal from the judgment of conviction as to count I.

As previously noted, the only issue raised by this appeal is whether defendant has been deprived of his constitutional right to a speedy trial in violation of his rights under the sixth amendment of our Federal Constitution. In urging that the trial justice erred in denying his motion to dismiss, defendant makes two main points. First he contends that the trial justice erred because he applied the wrong standard in determining whether there had been a denial of the right to speedy trial. Secondly, he argues that error occurred because the trial justice misconceived and misapplied the appropriate factors to be considered.

Before discussing the arguments made by defendant, we shall refer briefly to several recent cases in which this court has discussed the standards and factors which should be applied in determining whether there has been a denial of the constitutional right to a speedy trial. We refer specifically to our decisions in *State* v. *Rollins,* 113 R. I. 280, 320 A.2d 103 (1974); *State* v. *Crapo,* 112 R. I. 729, 315 A.2d 437 (1974); *State* v. *King,* 112 R. I. 581, 313 A. 2d 640 (1974); and *Tate* v. *Howard,* 110 R. I. 641, 296 A.2d 19 (1972). In all of those cases we were guided by, and, indeed, applied the reasoning of Mr. Justice Powell

---

proof for conviction, and where the establishment of one charge constituted establishment of the other, the Supreme Court would sustain a conviction on one charge and dismiss the conviction on the other charge.

Presumably the Superior Court in this case applied the inverse of the *Boudreau* reasoning and found that if a judgment of acquittal was proper on the assault charge (count II of this indictment) a dismissal was also appropriate as to the charge of possession of a firearm while committing a crime of violence (count III of this indictment).

in *Barker* v. *Wingo,* 407 U. S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972). We too recognized the impossibility of determining with precision where this right has been denied.

The rule which emerged from those cases is that the right to a speedy trial under our State and Federal Constitutions is a relative one and that the determination of the time within which trial must be had to satisfy the constitutional guarantee to defendants is dependent upon the facts and circumstances of each particular case with due consideration given to the following four elements: (1) length of delay; (2) reason for the delay; (3) assertion of one's sixth amendment right; and (4) prejudice to the accused.

Our concern, however, is not with the statement of the rule, but with its application to the facts of this case.

### Length of Delay

We note at the outset that the case at bar involves pre-indictment delay. *Compare State* v. *Crapo, supra* at 733, 315 A.2d at 440. *See also United States* v. *Marion,* 404 U. S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), where the defendants claimed their rights to a speedy trial were violated by the passage of approximately three years between the end of the criminal scheme involved in that case and the return of the indictment. The defendants in that case had not been arrested or otherwise charged prior to their indictment. In denying defendants' sixth amendment claims the Court said:

> "In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused', * * *.
> "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . .' On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends

only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him."[3] *Id.* at 313, 92 S.Ct. at 459, 30 L.Ed.2d at 474.

Unlike the situation in *United States* v. *Marion,* wherein no defendants were arrested or charged prior to indictment, defendant in the case at bar was originally charged by the Warwick Police Department on September 4, 1971, one month after the alleged robbery. Assuming without deciding that defendant became an "accused" upon the issuance of the complaint and warrant, our concern in reviewing defendant's sixth amendment claim would involve the period of delay which extended from September 4, 1971, the date the charge was originally made against defendant, until defendant was brought to trial in July 1974, some eight months after the detainer was lodged and about two months after he was indicted.

However, as we pointed out in *State* v. *Crapo, supra* at 734, 315 A.2d at 440, mere passage of time, standing alone, is not enough to justify a holding that the guarantee to a speedy trial has been violated. Other factors must

---

[3] In *Hoffa* v. *United States,* 385 U. S. 293, 87 S.Ct. 408. 17 L.Ed.2d 374 (1966), the Court declined to impose a constitutional requirement that law enforcement officers cease investigation and commence adversary proceedings against a suspect as soon as minimum probable cause is established. The Court was loath to place the police in a position where they were required in every case "* * * to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long." *Id.* at 310, 87 S.Ct. at 417, 17 L.Ed.2d at 386.

be considered. The length of the delay, as noted by the Court in *Barker* v. *Wingo, supra* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117, is to some extent a triggering mechanism; that until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance; but that nevertheless, because of the imprecision of the right to a speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. As this court said in *Marzilli* v. *Howard*, 108 R. I. 309, 311, 274 A.2d 902, 903 (1971),

> "* * * whether the delay is so unreasonable as to amount to an infraction of the right and, therefore, to require a consequent dismissal of the indictment depends upon all of the circumstances."

The fact that the state's case against defendant rested entirely upon the testimony of eyewitnesses whose memories are allegedly dulled by the passage of time is not sufficient to persuade us that the length of delay is the most crucial of the four factors which should be considered by the court and that it "should be accorded greater weight than any of the remaining three." It is merely one of the factors that requires the court's consideration in determining whether defendant had been deprived of his constitutional right to a speedy trial. A reading of the trial justice's decision shows that in weighing the four factors he indeed recognized the length of the delay and this triggered his inquiry into the remaining factors. Thus, we believe that the trial justice maintained this element of the four-part test in its proper perspective.

### The Reason for Delay

In explaining the reason for the delay, the prosecuting attorney used language very similar to that found in *State* v. *Crapo, supra* at 734-35, 315 A.2d at 440-41, placing

the blame on the cumbersome system used in the District Courts in 1971.

In passing on the reason for the delay, the trial justice concluded that as to this factor *Crapo* was "very analogous and almost on all fours" with the case at bar with respect to at least one factor, namely,

> "* * * the fact that the State very frankly and very candidly said it could not understand or explain why the local police department had waited so long before going ahead with their trial."

In *Crapo*, we held:

> "* * * that the delay experienced by this defendant was caused by the state through inadvertence on the part of the municipal prosecuting authorities and through a lack of communication between the state and municipal prosecuting departments. The defendant could not be blamed for this situation." *Id.* at 735, 315 A.2d at 441.

In the case at bar the trial justice concluded that with respect to the reason for the delay, *State* v. *Crapo, supra,* was applicable.

### Assertion of Defendant's Right to Speedy Trial

The trial justice held that notwithstanding the lengthy delay and the state's failure to give a valid explanation for such delay, he was not satisfied that there had been a sufficient showing of defendant's assertion of his right and prejudice to him by his failure to secure a speedy trial.

We consider first the assertion factor. The detainer was lodged with the federal authorities on September 4, 1973. This resulted in defendant's communication by mail with a justice of the Superior Court. That communication caused the Attorney General's Department to seek an indictment and, on July 15, 1974, after the indictment was returned, defendant filed the instant motion to dismiss for lack of a speedy trial. The trial justice was not

satisfied that defendant's assertion was adequate. On the view we take of this appeal, it is not necessary to discuss this factor at any great length. As we pointed out in *State* v. *King,* 112 R. I. 581, 586, 313 A.2d 640, 642 (1974), the defendant's failure was not fatal; the defendant's assertion of or failure to assert his right to a speedy trial is only one of the factors to be considered in an inquiry into the deprivation of the right. *State* v. *Crapo, supra* at 737-38, 315 A.2d at 442; *Barker* v. *Wingo, supra* at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. Assuming, without deciding, that the trial justice erred in finding that defendant's assertion of his right was not an adequate assertion, the question remains whether in engaging in the difficult and sensitive balancing process, *Barker* v. *Wingo, supra* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, he erred in his ultimate decision denying defendant's motion to dismiss for lack of a speedy trial. In the circumstances of this case, the answer to this question depends upon the correctness of his finding as to the factor of prejudice.

## Prejudice

At the hearing in the Superior Court on the motion to dismiss, defendant based his claim of prejudice on two basic grounds. First, he attempted to show that the detainer lodged against him weighed against his ability to engage in rehabilitation programs. Secondly, he argued that there was a dulling of memory from August 1971 until July 1974, when he was finally brought to trial.

The trial justice responded to defendant's argument by comparing the facts in the case at bar with those in *State* v. *Crapo, supra.* After describing the facts in *Crapo,* he said:

> "I don't have before me any factual information similar to that which appeared in the *Crapo* case with respect to any act of prejudice. The only prejudice I've heard about is a rather general statement

> to the effect that the Defendant may not have had available to him all of the rehabilitative programs at the Lewisburg Penitentiary or at any other penitentiary where he may have been confined, and as a result of the delay he cannot remember or he may have difficulty remembering where he was on a certain day in 1971; so to that extent, the situation is different."

The defendant's counsel offered to let defendant take the stand and testify as to what programs were not available to him at the Lewisburg penitentiary as a result of "this detainer and others" and what had happened to him because he had been in this jurisdiction awaiting trial. In response to said offer, the trial justice stated that from what he had heard, he did not believe that testimony from defendant would be of any value because it would be self-serving. He did not deny defendant the right to take the stand if he wished. The defendant did not take the stand.

The defendant's counsel next made an offer of proof as to what defendant would have testified to with respect to the rehabilitative porgrams available to him if he had taken the stand.[4] After ascertaining from defendant's counsel that it would be about 1978 or 1979 before defendant could apply for parole, even if there were no detainer, the trial justice held that he was not satisfied that there had been a sufficient showing of prejudice. We find no error in the trial justice's finding on the question of prejudice.

With respect to the factor of prejudice, State v. Crapo, supra, is factually distinguishable from the case at bar

---

[4]Defense counsel's offer of proof was as follows:

"Mr. Reilly: * * *

"I can make an offer of proof as to what he [defendant] would testify: Namely, because of this detainer and others, he is not eligible for parole until 1987 in Lewisburg, and the only reason this matter is before the court is that the defense did something about it."

and consequently of no help to defendant. In the instant case defendant had just begun to serve a 23-year sentence at the Lewisburg penitentiary and would not be eligible for parole until one-third of his sentence had been completed, regardless of whether he had a detainer lodged against him or not. In the case at bar, the facts surrounding the issue of prejudice are more akin to our recent decision in *State* v. *Rollins,* 113 R. I. 280, 320 A.2d 103 (1974), upon which the trial justice expressly relied. *See State* v. *Rollins, supra* at 283, 320 A.2d at 105, where the court said:

> "The remaining inquiry under *Barker* is whether or not defendant has been prejudiced by the delay. There the Court listed three ways by which the defendant might be prejudiced by the delay: by lengthy pretrial incarceration, by a substantial impairment of his defense, and by being subjected to public scorn and personal anxiety."

In referring to *State* v. *Rollins, supra,* the trial justice said:

> "* * * it would appear pretty clear in the McDonough case as in *Rollins,* one cannot with logic soundly or intelligently conclude that the Defendant was subjected to lengthy pretrial incarceration as a result of failure to have a speedy trial in the Indictment pending against him here."

The record supports the trial justice's conclusion. The defendant in the case at bar was not eligible for parole and thus his liberty would have been restricted anyway. He was not prejudiced by lengthy pretrial incarceration, nor was he subjected to any more public scorn and personal anxiety than he would have had the Rhode Island robbery charges not been pending.

In his brief defendant notes that it was pointed out in *Moore* v. *Arizona,* 414 U. S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), that *Barker* v. *Wingo, supra,* expressly rejected the notion that an affirmative demonstration of

prejudice was necessary to prove a denial of this constitutional right. We do not quarrel with this statement; we agree that under *Barker* v. *Wingo, supra,* an affirmative showing of prejudice is not required in determining whether there has been a denial of the constitutional right to a speedy trial; in addition to possible prejudice other factors must be considered. That was done in the instant case. Nor do we disagree with defendant's statement that the *Moore* court stated that

> "* * * no court should overlook the possible impact pending charges might have on his prospects for parole and meaningful rehabilitation." *Moore* v. *Arizona,* 414 U. S. at 27, 94 S.Ct. at 190, 38 L.Ed.2d at 186.

The record shows that the trial justice was cognizant of this rule and did not misapply it.

We have considered all of the arguments made by the defendant, including those not expressly discussed by us. The defendant has failed to persuade this court that the trial justice erred in his denial of the motion to dismiss because he applied the wrong standard in determining whether there had been a denial of the right to a speedy trial, or because he misconceived and misapplied the appropriate factors.

For the reasons stated, the judgment of conviction is affirmed.

*Julius C. Michaelson,* Attorney General, *William Granfield, Brody,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Bruce G. Pollock,* Asst. Public Defender, for defendant.